## STATE OF NORTH DAKOTA, Respondent, v. JOHN SCHULTZ, Appellant.

(174 N. W. 81.)

**Statutes — presumption in favor of enrolled bill not conclusive.**

1. While every reasonable presumption is in favor of an enrolled bill, such presumption is not conclusive; and where the legislative journals clearly show that a statute was in fact never passed the court will adjudge it to be void.

**Statutes — not voted upon in senate not constitutionally enacted.**

2. For reasons stated in the opinion it is *held* that chapter 136, Laws 1917, was not constitutionally enacted.

Opinion filed July 29, 1919.

Appeal from the District Court of Ramsey County, *Buttz,* J.

Defendant appeals from the judgment of conviction, and from an order denying a new trial.

Reversed.

*Cuthbert & Smythe,* for appellant.

The title of the act must properly define the subject. Garrigan v. Kennedy, 19 S. D. 11, 101 N. W. 1081; State v. Becker, 51 N. W. 1018; State v. Morgan, 2 S. D. 32, 48 N. W. 314; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841; State v. Bryan, 39 So. 929; State v. Davis, 2 Iowa, 280; People v. McHaney, 13 Mich. 481; Louisiana v. Pillsbury, 105 U. S. 278; Norfolk Beet Sugar Co. v. State, 73 N. W. 69; Oxnard Beet Sugar Co. v. State, 102 N. D. 80; Pioneer Irrig. Dist. v. Bradley, 68 Pac. 295; Shrevport v. Tidwell, 36 So. 312.

The court erred in not requiring the state to elect upon which charge it would try the defendant. State v. Dean, 126 N. W. 692; State v. Lofthus, 104 N. W. 906; State v. Norris, 97 N. W. 999; State v. Higgins, 95 N. W. 244; State v. King, 91 N. W. 768; State v. Brown, 12 N. W. 318; People v. Simon, 131 Pac. 102; People v. Bartnett, 113 Pac. 879; People v. Hatch, 109 Pac. 1097; Goodhue v. People, 94 Ill. 37; State v. Lancaster, 78 Pac. 1081.

It is a fundamental that every material allegation in a criminal information must be proved by competent evidence beyond a reasonable doubt. 8 R. C. L. 218, from which we quote as follows: "That courts universally disapprove of misleading arguments, and it is reversible error to allow same." Fox v. People, 95 Ill. 71; State v. Hogan, 88 N. W. 774; Brown v. State, 60 Ga. 210; State v. Thompson, 106 La. 362; Com. v. Baldwin, 129 Mass. 481; People v. Aikin, 33 N. W. 321; Long v. State, 81 Miss. 448; Roberson v. State, 26 So. 645; People v. Smith, 59 Pac. 295; People v. Mitchell, 62 Cal. 411.

*Wm. Langer,* Attorney General, *George K. Foster,* Assistant Attorney General, and *Rollo F. Hunt,* State's Attorney, for respondent.

Where the act is enrolled in the manner provided by law, and is duly certified by the proper official of the legislature, approved by the governor, and deposited with the secretary of state, and certified by him as one of the laws of this state, these facts are conclusive as to the regularity of its passage in accordance with the constitutional requirements. Case note in 40 L.R.A.(N.S.) p. 1; 20 Ann. Cas. p. 350; 44 L.R.A.(N.S.) 468; L.R.A.1915A, 1210; L.R.A.1915D, 119; L.R.A.1916E, 1251.

"Unless the Constitution declares that the journals shall show the concurrence of one branch of the legislature in an amendment to a bill made by the other branch, the silence of the journals as to such concurrence in an amendment that appears in an enrolled bill is not sufficient to defeat it." Burks v. Jefferson County, 40 Ark. 200.

The act is not in violation of § 217 of the Constitution of North Dakota, prohibiting the manufacture, sale, or gift of intoxicating liquors. Re Crane, 27 Idaho, 671, 151 Pac. 1006; Crane v. Campbell, 245 U. S. 304.

The title of the act properly defines the subject of the act. State ex rel. Gaulke v. Turner, 37 N. D. 635, 164 N. W. 924; Great Northern R. Co. v. Turner, — N. D. —, — N. W. —, decided June 3, 1919, but not yet reported.

Only one offense is charged in the information. Comp. Laws 1913, § 10,688; Moffit v. People, 59 Colo. 406, 149 Pac. 104; Anderson v. Van Buren Circuit Judge, 130 Mich. 697, 90 N. W. 692; Sturgeon v. State, 17 Ariz. 513, 154 Pac. 1050; The People v. McDonald, 193 Ill. App. 553; Estes v. United States, 141 C. C. A. 102, 225 Fed. 980.

CHRISTIANSON, Ch. J. The defendant was convicted in the district court of Ramsey county of violating the so-called "Bone-dry" Law of this state. Laws 1917, chap. 136. And he has appealed from the judgment of conviction and the order denying a new trial.

The information charges that the defendant on July 5, 1918, within Ramsey county, committed the crime of aiding, abetting, and secur-

ing the delivery of intoxicating liquors to himself in violation of the provisions of chapter 136, Laws 1917. The defendant demurred to the information on the ground, among others, that it did not state facts sufficient to constitute a public offense. He also moved in arrest of judgment upon the same grounds as those stated in the demurrer. Defendant contends that chapter 136, Laws 1917, as a matter of fact, was never passed by the legislature, and is therefore not a law at all.

The statute under consideration was introduced on January 12, 1917, as House Bill No. 39. It was passed by the House of Representatives on January 31, 1917, as originally introduced. The first part of the act as introduced and passed by the House read as follows: "It shall be unlawful for any person, firm, or corporation to deliver, or receive or have in possession for delivery within this state any intoxicating liquor unless the package or container of such liquor shall be labeled on the outside in large clear letters showing the consignor, consignee, kind and quantity, percentage of alcohol, and place of delivery."

Upon reaching the Senate the bill was referred to the committee on temperance. This committee made a report recommending several amendments. The Senate adopted the amendments, and on March 1, 1917, passed the bill as amended. Senate Journal, pp. 1018, 1019. As passed by the Senate the above-quoted portion read as follows: "It shall be unlawful for any person, firm, or corporation to deliver, or receive or have in possession for delivery to any person, firm, or corporation within this state, more *than 4 quarts of spirituous liquors, or 5 gallons of wine, or 72 quarts of beer, malt or other intoxicating liquors within any consecutive thirty days, except that delivery of intoxicating liquors may be made to registered pharmacists for disposition as provided by law, for medicinal, mechanical, scientific, and wine for sacramental purposes* or any intoxicating liquor *for any purpose,* unless the package or container of such liquor shall be labeled on the outside in large clear letters showing the consignor, consignee, kind and quantity, percentage of alcohol, and place of delivery."

The other amendments made in the bill harmonized its provisions with the change made in the portion quoted. On March 2, 1917 (the last day of the legislative session), the bill was reported back to the House, with the statement that the Senate had amended the bill so that

the portion above quoted read as follows: "It shall be unlawful for any person, firm, or corporation to deliver, or receive or have in possession for delivery within this state any intoxicating liquor *for any purpose whatsoever, except that such liquors may be delivered, or received or possessed, for delivery by common carriers to registered pharmacists to be disposed of by them as provided by law; and* unless the package or container of such liquor shall be labeled on the outside in large clear letters showing the consignor, consignee, kind and quantity, percentage of alcohol, and place of delivery." (The matter inserted by way of the different amendments has been italicized.) The House of Representatives concurred in the alleged amendments reported and passed the bill as so amended. The Senate Journal shows that the amendments reported to the House had been proposed in the Senate, but that the Senate at the time it passed the bill expressly rejected them, and amended the bill as heretofore mentioned. Not only is this fact affirmatively shown by the Senate Journal (Senate Journal, pp. 1018–1019); but when the legislature was convened in extra session in January, 1918, the Senate unanimously adopted the following resolution:

"Whereas, there was passed at the fifteenth session of the legislature House Bill No. 39 appearing in the Session Laws for 1917 under chap. 136, and

"Whereas, the Journal of the House of Representatives, at page 1461, erroneously contains what is purported to be an amendment to said bill and as having been passed by the Senate as so amended, and

"Whereas, the House of Representatives passed said bill with such purported amendment assuming that this Senate had so amended and passed such bill (the record of the passage of such bill as amended will be found at page 1479 of said House Journal), and

"Whereas, it is within the knowledge of the members of the Senate and each individual Senator, and it is so recorded correctly at page 1018–19 of the Senate Journal for the fifteenth legislative assembly, that House Bill No. 39 as so amended by the Senate was not voted upon or adopted by the House of Representatives, the amendment as adopted by the Senate having been reported incorrectly or changed in the House after same had been reported to said House, and

44 N. D.—18.

"Whereas, through such gross carelessness or fraud such bill was passed by the House different in form and meaning than same was passed in the Senate.

"Now, therefore, be it resolved, that this Senate do now severely condemn the practice by which this fraud was perpetrated upon the Senate and the people of the State of North Dakota in order that this practice may cease in the future, and in order that the people may know that the laws of the state are made by the regular constituted legislative assembly, and not by clerks or employees of such assembly."

Now, under that state of facts, is it the duty of this court to hold that chapter 136, Laws 1917, was not enacted, and that in fact it is no law at all? That is the question here.

The Constitution declares: "Each House shall keep a journal of its proceedings, and the yeas and nays on any question shall be taken and entered on the journal at the request of one sixth of those present." Const. § 49. "No law shall be passed, except by a bill adopted by both Houses." Const. § 58. "No bill shall become a law except by a vote of a majority of all the members-elect in each House, nor unless, on its final passage, the. vote be taken by yeas and nays, and the names of those voting be entered on the journal." Const. § 65. By the express terms of the Constitution, all of its provisions "are mandatory and prohibitory unless, by express words, they are declared to be otherwise." Const. § 21. Provision has been made in our laws for the publication of the legislative journals (Comp. Laws 1913, § 40), and it is made the duty of the courts to take judicial notice of such journals and the history of every statute in its progress through the legislature. Comp. Laws 1913, § 7938, subds. 58, 59, 61. It has been made the duty of the secretary of the Senate and the chief clerk of the House to retain custody of all papers committed to them, "and at the close of each session of the legislative assembly to deposit for safekeeping in the office of the secretary of state all books, bills, documents, resolutions, and papers in possession of the legislative assembly, correctly labeled, folded, and classified." Comp. Laws 1913, § 39. A personal inspection of the records in the secretary of state's office discloses that no report or statement from the secretary of the Senate or the chief clerk of the House regarding House Bill No. 39 has ever been turned over to the secretary of the state.

It is frankly conceded by the respondent that the conflict between the enrolled bill and the journal entries of the Senate is irreconcilable, but it is contended that the enrolled bill is conclusive, and that the court is powerless to look beyond it. This presents a question upon which there is a direct conflict in the authorities. One line of authorities holds that the enrolled bill is conclusive, and that the courts cannot go behind it. Another line holds that the enrolled bills are presumed, to have been regularly adopted, but that the presumption is not conclusive, and that the court may look to the records of the legislative bodies to ascertain whether a statute has been enacted. The rule established by the first line of authorities was adopted from England. It is well to remember that England has no written constitution. Parliament is the tribunal which determines whether a law is in accord with the principles of the unwritten constitution, and of course it also determines the propriety of the procedure of enactment. England has a King. It is a canon of the law of England that the King can do no wrong. In view of these facts there seems to be a very good reason for the rule adopted in England, that when a bill has passed both Houses and received the royal assent, a court cannot look beyond it, but that the Parliament roll is conclusive. But our government is founded upon a written constitution. The courts, and not the legislative bodies, eventually determine whether statutes violate the Constitution. All our officials are sworn to support the Constitution. It is assumed that they will perform that duty. And when any official act is assailed, the law presumes that the act was regularly performed, but the presumption is not conclusive. Comp. Laws 1913, § 7936, subd. 14. We have no king. Our officials are public servants, enjoined to perform certain duties in accordance with the mandates of the Constitution. The sovereign will of the people as expressed in the Constitution alone is supreme. No one is above it; all are subject to and bound thereby. The Constitution is the means employed by the sovereign people to limit the powers of their agents, especially those of the legislative department. State ex rel. Miller v. Taylor, 22 N. D. 362, 368, 133 N. W. 1046.

No good purpose would be subserved by entering into an extended discussion of the various authorities dealing with the question whether

an enrolled bill is conclusive evidence of the passage of a law. These authorities will be found collated in notes in 23 L.R.A. 340; 40 L.R.A. (N.S.) 1; 44 L.R.A.(N.S.) 468; L.R.A.1915A, 1210; L.R.A.1915D, 119; L.R.A.1916E, 1251. An examination of the authorities will disclose not only the two conflicting rules mentioned, but different reasons advanced for, and different applications of, the rules. In an editorial note in 23 L.R.A. 348, it is said: "It will be noticed that in many instances decisions from the same state appear on both sides of the question, and it is a fact that many of the states have changed their rule once, and sometimes two or more times. . . . In fact the court seems to be exceptional which has adopted at the outset a rule which has proved perfectly satisfactory." The question was dismissed by this court in Power v. Kitching, 10 N. D. 254, 262, 88 Am. St. Rep. 691, 86 N. W. 737, although the court stated that it was not necessary to a determination of the case. It was again considered in Woolfolk v. Albrecht, 22 N. D. 36, 40–43, 133 N. W. 310, wherein the court treated the question as an open one, and refrained from adopting either rule. Both in Power v. Kitching, and Woolfolk v. Albrecht, the court consulted the journal entries, and the inferences drawn therefrom are set forth in the opinions.

Either the enrolled bill is conclusive, or it is not. If it is conclusive then, of course, the court may not look beyond it for any purpose. If this view is correct then an enrolled bill is the law of the state, and must be enforced as such even though it affirmatively appears from the legislative records that the bill never received the approval of either House. We have already noted some of the restrictions which the people, in their Constitution, have placed upon the legislative department. They have said that each House shall keep a journal of its proceedings; that "no law shall be passed, except by a bill adopted by both Houses," and that "no bill shall become a law except by a vote of a majority of all the members-elect in each House, nor unless, on its final passage, the vote be taken by yeas and nays, and the names of those voting be entered on the journal." Const. §§ 49, 58, 65. They have also said that these provisions are mandatory and prohibitory. Const. § 21. Yet if the enrolled bill is conclusive, these provisions are rendered nugatory. An enrolled bill would be law, even though the

legislative records prescribed by the Constitution demonstrated that the bill had never been passed. That which the people had said should not be law would nevertheless be the law. Clearly such a result was never contemplated by the men who framed, and the people who adopted, the Constitution. When they prescribed the conditions under which legislative power should be exercised, they intended that it should be exercised only in the manner prescribed. Cooley, Const. Lim. 7th ed. pp. 114, 115. When they required legislative records to be kept and certain matters to be recorded therein, they had a reason for so doing. The purpose and effect of such provisions were well known at the time our Constitution was adopted. Among the framers of the Constitution were men learned in constitutional law. The constitutional convention was addressed by the celebrated Judge Cooley, and doubtless many of its members were familiar with his great treatise on Constitutional Limitations. In that treatise, Judge Cooley, said: "It is also provided in the Constitution of some of the states that, on the final passage of every bill, the yeas and nays shall be entered on the journal. Such a provision is designed to serve an important purpose in compelling each member present to assume, as well as to feel, his due share of responsibility in legislation; and also in furnishing definite and conclusive evidence whether the bill has been passed by the requisite majority or not. 'The Constitution prescribes this as the test by which to determine whether the requisite number of members vote in the affirmative. The office of the journal is to record the proceedings of the house, and authenticate and preserve the same. It must appear on the face of the journal that the bill passed by a constitutional majority. These directions are all clearly imperative. They are expressly enjoined by the fundamental law as matters of substance, and cannot be dispensed with by the legislature.' " Cooley, Const. Lim. 7th ed. p. 201. "Each House keeps a journal of its proceedings, which is a public record, and of which the courts are at liberty to take judicial notice. If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirement of the Constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence, and adjudge the statute void." Id. pp. 193–195.

We cannot adopt the rule that the enrolled bill is conclusive evidence of the enactment of a law. We believe that such rule runs counter to the spirit and letter of our Constitution. It is the duty of the court to ascertain and give effect to the intention of the lawmakers. But even more so is it our duty to enforce and give effect to the provisions of the Constitution, which is the supreme law of the state. In determining what the law is, it is the duty of the courts to look to those sources which the people in their Constitution have made available for that purpose. It is no disrespect to the legislative department (as has been suggested in some of the cases) to go to the records which they have made to ascertain the truth. Manifestly it would be a far greater disrespect to the lawmakers to say that is a law which their records clearly and unequivocally show that they refused to enact.

In this case there is no question about the facts. Chapter 136, Laws 1917, was never enacted. It was never passed by the Senate at all. Not only is this fact shown by the legislative journals of the 1917 session, but was so proclaimed by the Senate by unanimous vote when convened in extra session in 1918.

It follows from what has been said that the information in this case does not state the facts sufficient to constitute a public offense. The judgment of conviction is therefore reversed, and the action is ordered dismissed.

ROBINSON, J., concurs.

BIRDZELL, J. (concurring specially). I concur in the opinion of Mr. Chief Justice. Christianson, holding that the enrolled bill is not so far conclusive evidence of the facts in connection with the passage of a bill as to preclude reference to the journals for the purpose of ascertaining therefrom the facts required to be recorded. And I concur in the reasoning of the opinion upon which the conclusion is based. However, some statements are made or quoted which might lead to the conclusion that the enrolled bill would not be conclusive where, through omission, the journals failed to contain facts which are essential to the due passage of the bill. In the case before us the facts recorded in the journal negative the passage of the bill. It is not a

case, therefore, of mere omission to record acts which might or might not have taken place. What is said, therefore, with reference to the effect of a mere omission is dictum, and I express no opinion upon such question. I concur in the syllabus and in the opinion, but do not wish to be understood as expressing any opinion concerning the conclusiveness of an enrolled bill as against facts which are required to be entered in the journals, and which may not be so entered, or as to the effect of mere omissions in a legislative journal.

BRONSON, J. (specially concurring). I concur in the determination made that the judgment must be reversed and the action ordered dismissed upon the ground that chapter 136, Laws 1917, was not ever adopted as the law of this state, and that therefore the information does not state a public offense. Under § 58 of the Constitution no law shall be passed except by a bill adopted by both Houses, and under § 65 of the Constitution no bill shall become a law unless, on its final passage, the vote be taken by "yeas" and "nays" and the names of those voting be entered on the journal. As set forth in the opinion of Justice Christianson, and as disclosed by the Journals of the House and Senate of the legislative session of 1917, chapter 136, Laws of 1917, was, in fact, never up before the Senate for a third reading and final passage in the form that it was adopted, and it never was, in fact, voted upon by the members of the Senate in 1917. Although the President of the Senate and the Speaker of the House signed the engrossed bill in the form that it now appears as an apparent law, and the bill became by signature of the governor and filing as ordinarily required an apparent law, nevertheless in fact, it was never adopted as such by the Senate of 1917. Although high presumptions should obtain as to the conclusiveness of the engrossed bill, yet the provisions of the Constitution are mandatory, and a bill that was in fact not passed cannot be made a law by the mere certification of the state officers, when it has, in fact, not been passed by the legislative body having the power so to do.

GRACE, J. I concur in a large part of the reasoning and in the result reached in the specially concurring opinion of Justice BRONSON.