STATE OF NORTH DAKOTA EX REL. A. G. SORLIE, Governor, R. S. Ashley and I. J. Moe, Acting or Assuming to Act as the State Highway Commission, and J. J. Ermatinger, Secretary thereof, Petitioners, v. JOHN STEEN, as State Auditor, Respondent.

(212 N. W. 843.)

**Statutes — presumption that necessary steps in legislation were taken.**

1. It is presumed that all steps necessary to effect the legislative result evidenced by an enrolled bill have been regularly taken, and this presumption will prevail until the contrary is made to appear from the records showing the action of the legislative bodies.

**Statutes — enactment of emergency effective.**

2. Where it appeared that a bill voted upon in the House of Representatives contained an emergency clause and where the bill received the favorable vote of the constitutional majority required for passage but not sufficient to make the emergency clause effective, and where the engrossed bill containing a record of this action was sent to the Senate where it was amended and voted upon, receiving the favorable vote of more than the constitutional majority (requisite for passage) and of more than two-thirds present and voting (requisite for making the emergency clause effective), and where the emergency clause was declared carried, whereupon the bill was returned to the House with a message apprising the House of the amendment, the engrossed bill being likewise endorsed to show the vote of the Senate and that the emergency clause had carried, the House assenting to the amendment and upon roll call finally passing the bill by a vote sufficient to make the emergency clause effective, the speaker declaring the emergency carried, it is *held* that such legislative record does not contradict the recital in the enrolled bill that it shall be in effect from and after its passage and approval and that it does not disprove that the measure, with the emergency clause, passed both houses by the constitutional two-thirds majority to make such clause effective.

Annotation.—(1) Presumption of regularity from enrolled bill, see 25 R. C. L. 894.

**Statutes — legislative record — emergency recitals not contradicted.**

3. The failure of a bill bearing an emergency clause to receive the constitutional two-thirds majority of the members present and voting in one house to make such emergency clause effective, is not equivalent to an amendment striking such emergency clause from the bill, and a legislative record showing the failure of one house upon a vote to give its assent by the requisite majority to make the emergency clause effective, followed by favorable action upon the entire bill by the requisite two-thirds vote, does not contradict the emergency recitals in the enrolled bill.

Opinion filed March 26, 1927.

Statutes, 36 Cyc. p. 955 n. 29; p. 957 n. 35; p. 1243 n. 5; p. 1246 n. 31; p. 1249 n. 65; p. 1250 n. 66.

Original application for writ of mandamus.

Writ granted.

*H. A. Bronson,* for petitioners.

*Geo. F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for respondent.

PER CURIAM. This is a proceeding in mandamus. It is brought by the state on relation of those acting or assuming to act as the state highway commission against the state auditor, for the purpose of requiring the latter to issue a state warrant in payment of vouchers approved by the relators. The issues here are framed by a petition to which a motion to quash and a demurrer have been filed. An extended statement of facts, as contained in the petition, is not essential to an understanding of the issue presented. Suffice it to say that in the legislative session of 1927 a bill known as House Bill No. 162 was introduced, and after being somewhat amended was passed in both houses of the legislative assembly. There are on the enrolled bill, which is on file in the office of the Secretary of State, certificates of legislative action by appropriate officers to the effect that two-thirds of the members of the House and of the Senate voted in favor of the law and that the same was approved by the Governor. Section 8 of the enrolled bill is an emergency clause declaring that the act shall take effect and be in force from and after its passage and approval. The Governor, upon whom the power of appointment is conferred by section 2 of the bill,

appointed two of the relators to membership on the commission, and the commission proceeded to organize, naming the other relator as its secretary and chief administrative officer. The relators have since assumed to act, respectively, as the state highway commission and as the administrative officer thereof and to displace other officers who have heretofore performed the duties which are delegated to the commission under House Bill 162. It is the contention of the respondent that the emergency clause to House Bill 162 is not effective and that, consequently, he can not lawfully pay the vouchers authorized by the relators, as such commission can have no legal existence until after July 1st.

Following is the legislative history of the act in question according to the journals and the engrossed and enrolled bills: The bill was introduced in the House on January 29th. First and second readings were had on that day and the bill was referred to the committee on highways and bridges. It was later reported back with amendments and went into the consideration of the committee of the whole, where it was amended and recommended for final passage. On February 21st it was read the third time and passed as amended by a vote of 60 ayes to 44 nays, absent and not voting 8. The emergency clause was declared lost. The bill was transmitted to the Senate on February 23d, where it was read the first and second times and referred to the committee on state affairs. The engrossed bill which was before the Senate bore an endorsement indicating the House vote and that the emergency clause had been declared lost. The original engrossed bill now on file in the office of the secretary of state contains a pencil notation in the margin opposite § 8, the emergency clause, as follows: "Lost." There are also some pencil-marked crosses across the lines of this section. On March 1st the committee reported, recommending the bill for passage, and on March 3rd it was read the third time and before being voted upon it was amended in a particular that is not material to any question here involved. After amendment the bill was passed by a vote of 41 ayes and 8 nays and the emergency clause was declared carried. Under date of March 3d, but appearing in the House Journal as of March 4th, the Secretary of the Senate returned the bill with the information that the Senate had amended the same according to the action taken when the bill was placed on third reading and final passage

55 N. Dak.—16.

in that body, no reference being made to any vote on the emergency clause nor to any declaration that the same had carried. Upon the returned engrossed bill, however, was endorsed the vote of the Senate and the expression "Emergency Carried." Upon receipt of the message the author of the bill moved that the House concur in the Senate amendment and the motion prevailed. The same member then moved that the rules be suspended and that the bill be considered properly re-engrossed and placed on third reading and final passage. This motion likewise prevailed. The journal recites that the bill was read the third time and upon the question of the final passage of the bill as amended the roll was called, resulting in a vote of 97 ayes, 2 nays, absent and not voting 13. The bill was declared passed and the emergency clause declared carried. The vote and notation "Emergency Carried" are endorsed on the engrossed bill. Thereafter the bill was enrolled and signed by the officers of the two houses. Above the signatures of the officers of each house is a certificate of the vote of the body. The vote embodied in the certificate of the speaker and the chief clerk of the House is the last vote of that body, which is recorded as 97 ayes, 2 nays, absent and not voting 13.

The contentions of the respondent on these facts are: That upon the first passage of the bill in the House the emergency clause (§ 8) was lost through receiving an insufficient number of votes to make it effective; that the notations made, both on the back of the engrossed bill which was sent to the Senate and in and opposite § 8, to indicate this fact had the effect of removing the section permanently from the engrossed bill; that it follows that the Senate vote of 41 to 8 could not operate as the passage of the bill with the emergency clause and the declaration that the emergency carried was ineffective. But, taking another view and assuming that the action of the Senate was sufficient to carry the bill as an emergency measure in that body, it is argued that the subsequent proceedings are ineffective to result in the carrying of the emergency section in the House in that the message from the Senate did not advise the House that the engrossed bill had been amended in any particular relating to the emergency clause, from which it would follow that when the House, by motion, concurred in the Senate amendment, it did not concur in the action of the Senate upon the emergency clause. Likewise when the House passed the motion to

suspend the rules and consider the bill re-engrossed the effect of the motion was to re-engross the bill according to the previous House action as amended according to the message from the Senate, thus omitting the emergency clause from the bill as last voted upon in the House.

Both parties concede the correctness of the principles laid down in State v. Schultz, 44 N. D. 269, 174 N. W. 81, to the effect that the courts may go behind the enrolled bill and inquire into the legislative records to determine whether or not constitutional requirements have been observed. The difficulty in the instant case arises upon the attempt to apply the principles of the Schultz Case to the facts. It is, of course, conceded that presumptions are in favor of the regularity of legislative action. This presumption so operates that, looking backward from the enrolled bill, all prior steps necessary to effect the legislative result evidenced by the enrolled bill are deemed to have been regularly taken. This will be presumed until the contrary is made to appear from the records. In the Schultz case the legislative record contradicted and completely overcame this presumption. It showed conclusively that the two houses did not vote upon the same bill and that the provisions of the enrolled bill never in fact gained the assent of a majority of those elected, as required by the Constitution. In the instant case, we are of the opinion that the legislative record does not contradict the enrolled bill as in the Schultz Case. There might appear to be some inconsistency involved in the Senate actually voting upon a bill including an emergency clause which had been lost in the House; but, on the other hand, the vote upon such emergency clause was not taken until after the Senate had amended the bill in another particular, which action would require a further expression of the assent of the House before the bill could become a law. It might well have been assumed by the Senate that the House might be willing to concur in the amendment and, if so, that it might favor the emergency clause. Furthermore, since the House voted on the bill with the emergency clause included, it might be reasonably contended that this clause should go before the Senate, else the identity of the bill might be destroyed. It is not reasonably open to dispute that the Senate actually voted upon the bill as amended and upon the emergency clause. The declaration of its presiding officer and the notation of its officers en-

dorsed upon the engrossed bill returned to the House clearly indicate this fact. If, then, the House was apprised of this action and subsequently assented to the Senate amendment and voted upon the bill with knowledge that the Senate had likewise voted favorably upon the emergency clause, we are clearly of the opinion that the record may not be said to dispute the recitals in the enrolled bill. The message from the Senate recited the Senate amendment in the body of the act; also the fact that the bill was returned. This could mean only the engrossed bill, and, since the engrossed bill bore the endorsement of the action of the Senate upon the emergency clause, we are of the opinion that the effect of the motion to suspend the rules and consider the bill properly re-engrossed was to consider it re-engrossed so as to embody the complete action of the Senate. From this it follows that upon third reading and final passage, the House assented to the entire bill including the emergency by the requisite two-thirds vote. This legislative record does not clearly contradict the recitals of the enrolled bill; on the contrary, it appears to be consistent with them.

The argument on behalf of the respondent derives much of its force from the assumption that the failure of the House to pass the bill on the first vote by the two-thirds majority necessary to make the emergency clause effective had the effect of striking the emergency clause from the body of the act, just as this result would have been accomplished by an amendment eliminating the section. It is, in our opinion, unnecessary to elaborate the distinctions between an amendment changing the body of a bill and the effect upon an emergency clause of the failure to secure the requisite two-thirds vote of one house. Suffice it to say that the failure to secure a two-thirds vote does not effect an amendment. Amendments are made by the vote of a majority voting upon the question and before a final vote on the bill; whereas, emergency clauses are defeated by a majority greater than one-third of the members present and voting (State Const. § 67), and this is accomplished by their voting against the entire bill and not upon a proposal to amend. This minority could not effect an amendment; it could simply prevent the bill from going into effect as a law before the time fixed in the Constitution. If the failure of one house to accord a two-thirds vote to an emergency measure were equivalent to an amendment, then in case the vote in the first house should be two-thirds or more

and in the second less than two-thirds, the bill would have to be again voted upon in the first house to show concurrence in the amendment. The legislative practice under the Constitution seems to recognize this distinction. It will be noted, for instance, that in the legislative session of 1925 the following chapters contain emergency clauses which are embodied in the enrolled bills and the published acts, notwithstanding the fact that the vote by which the bills were passed was insufficient to make the emergency clauses effective. Chapters 11, 18, 19, 91, 144 and 217. Being of the opinion that the legislative record does not in the instant case contradict the declaration in the enrolled bill that it shall be in effect from and after its passage and approval and that it does not disprove that the measure containing such recital passed both houses by more than the constitutional two-thirds majority to make it effective, the act in question was accordingly effective when the vouchers here involved were approved and they should be paid.

Writ awarded.

BIRDZELL, Ch. J., and BURKE, BURR, CHRISTIANSON, and NUESSLE, JJ., concur.