## CARTER v. THORSON, Secretary of State.

1. Chapter 99, Compiled Laws, 1891, divides the public printing of the state into classes, and directs the secretary of state, as ex officio commissioner of public printing, to advertise for bids for doing the same, and to make contracts with the best and lowest bidders for doing such printing as the state may require. *Held*, that a contract so made does not "incur an indebtedness" on the part of the state, within the meaning of section 9, art. 11, of the constitution, prohibiting the incurring of indebtedness "except in pursuance of an appropriation for the specific purpose first made.

2. Such contract imposes no obligation upon the state to have any work done, but, in effect, simply designates the parties who are entitled to do whatever work of the several classes the state may require, and fixes the compensation therefor, if any shall be so required and done.

3. Except as made by the constitution itself, the legislative department alone has power to make appropriations from the state treasury for the payment of state indebtedness.

4. The primary thought and purpose of said section 9, art. 11, prohibiting the incurrence of indebtedness, except in pursuance of appropriations,

was to confine the creation of indebtedness to such subjects and to such amounts as were expressly approved by that department of the government which would be required to provide for its payment.

5.  Without deciding that under no circumstances could this provision be held to control the power of the legislature to incur or to direct the incurrence of indebtedness, it is *held* that such provision was not intended to, and consequently does not prevent the legislature from incurring, or immediately directing the incurring of, indebtedness for the usual and current administration of state affairs without first having made an appropriation for the specific purpose.

(Syllabus by the Court.   Opinion filed June. 13, 1894.)

Application by Arthur L. Carter against Thomas Thorson, secretary of state, for a writ of prohibition.   Denied.

The facts as stated in the opinion.

*J. W. Carter*, for plaintiff.

*Coe I. Crawford, Attorney General. (John L. Pyle, of counsel)* for defendant.

KELLAM, J.   This is an application to this court for a writ of prohibition enjoining defendant, as secretary of state and ex-officio commissioner of public printing, from letting contracts for the public printing for the state under chapter 99, Laws 1891.   It is unnecessary to refer in detail to the statements of the petition for this writ, for it is conceded by both sides that the allowance or disallowance of the writ must depend upon whether, under our constitution, the legislature can empower the secretary to make such contract until an appropriation is made to pay for the work which may be done under it.   The law referred to divides the public printing of the state into five classes, and authorizes the secretary of state, as ex officio commissioner of public printing, to advertise for proposals to do the same and to make contracts for such work with the best and lowest bidders.   The five classes are as follows:   "First class.   Printing and binding all bills for the two houses of the legislature and such resolutions, petitions and memorials as are required to be printed for daily use of the legislative assembly. Second class.   Printing and binding the journals of the two

houses of the legislature and such reports, communications and other documents as enter into and make up the journals. Third class. Printing and binding of reports of state officers, of penal and charitable, educational and other public institutions and other documents ordered by the legislature, together with the executive documents and legislative manual. Fourth class. Printing and binding general laws and joint resolutions, revised codes and supreme court reports. Fifth class. Printing of circulars and blanks for state officers and all other printed matter not in pamphlet form and not included in the foregoing classes." The secretary has duly advertised and received and opened bids, and, being about to make contracts with the successful bidders, this writ of prohibition is sought, forbidding the making of such contracts, on the sole ground that, no "appropriation for the specific purpose" of meeting the expense of such printing having been made, the secretary could not, without violating the express injunction of the constitution, make such contracts on the part of the state. The constitutional prohibition relied upon by plaintiff is contained in section 9 art. 11, of the constitution, and is as follows: "No indebtedness shall be incurred, or money expended by the state, and no warrant shall be drawn upon the state treasurer, except in pursuance of an appropriation for the specific purpose first made. The legislature shall provide by suitable enactment for carrying this section into effect."

It is conceded that the secretary is proceeding in strict pursuance of the terms of the law, but, as already intimated, plaintiff's contention is that to make such enactment a valid operative law, carrying authority to the secretary, was beyond the power of the legislature, unless, prior to or simultaneously with its passage, they also make an appropriation for the specific purpose of defraying any indebtedness that might be incurred under it; and so an important question is, has the legislature, by this law, attempted to empower the secretary to incur an indebtedness on the part of the state?

The law, by section 2, fixes a schedule of maximum prices for the several kinds of work enumerated in the five classes. Section 3 makes the secretary ex officio commissioner of public printing, with power to supervise and measure the work, and adjust the accounts for doing the same; section 4 requires him to advertise for bids or proposals to do the work covered by the five classifications, and to make contracts therefor with the lowest and best bidders; and section 5 provides that on the assembling of the legislature he shall submit to that body estimates of the probable cost of the printing for the ensuing two years. The purpose of the law is plain, and its procedure orderly and business-like; and neither should be defeated, unless in contravention of the rule of the constitution. The objection is, and probably can be urged, only as to the work included in the first, second, and fourth classes; that covered by the third and fifth classes being provided for in the general appropriation act of 1893, except as to the item of supreme court reports, which will be specially noticed later. It will thus be seen that the work, the payment for which no appropriation has been made, is that which is to come immediately and directly from the legislature next to meet; but neither as to this, nor that of either of the other classes, does the contract which the secretary is authorized to make assume to create an indebtedness against the state. It simply determines and provides who shall do, and be entitled to do, the work, in either class, that may be required, and what prices shall be paid for it, if done. The making of such a contract does not incur an indebtedness. We are referred to no constitutional or statutory requirement that the reports of state officers, or the other items enumerated in classes 3 and 5, shall be printed; and surely the legislature may do as it pleases about printing its bills introduced, and its daily journals, except as the latter are required by the constitution to be published ''from time to time.'' This provision, being constitutional, would not yield to the requirement for an antecedent appropriation. The legal effect of

making such contract is hardly more than to designate a public printer of the different classes of work named. It confers upon the contractor the right to do all the work, at the prices designated, which the state requires, of the kind designated in his contract; and, upon the state, the right to have so done such work as it may require. It thus fixes the relations of the parties, and their respective rights and duties, and may prove the foundation upon which an indebtedness growing out of further facts may finally rest; but we do not think it incurs an indebtedness, within the meaning of this constitutional prohibition.

There is, however, another view which we are disposed to take of this constitutional provision. The form of this prohibition is very suggestive of at least its primary purpose and scope. No indebtedness must be incurred, unless in pursuance of an appropriation previously made. Does this mean that the legislature itself can involve the state in no indebtedness for any purpose, unless, before doing so, it has made an appropriation for that specific purpose? Might the secretary of state, or an employe of the legislature, properly ignore a legislative direction, legal in form, to supply their chambers with thermometers, or clocks, or window shades, or ventilating appliances, because no appropriation for the same had first been made? With the legislature rests the right and the duty of determining, within constitutional limits, when, and for what purposes, the public moneys of the state shall be paid out. Within such limits their judgment is supreme. What they approve and appropriate for must be paid, and, except as provided in the constitution, nothing else can be paid. In this respect all other departments and agents of the state are subordinate to them. We think the primary thought and purpose of this provision were to prohibit any other department, officer, or agent of the state from involving the state in any expense or indebtedness which the legislature had not previously approved and authorized by an appropriation. It was intended to keep

the indebtedness of the state, and the power to incur indebted-ness, strictly within and under the control of that department which would be required to provide for its payment. It was not only appropriate and reasonable, but apparently requisite, that the legislature, to which must be looked for the means to meet indebtedness, should be allowed to control the making of indebtedness. The closing sentence of the section emphasizes this thought,—"The legislature shall provide by suitable en-actment for carrying this section into effect." It would appear that the object of the provision which was immediately in view by the makers of the constitution was thus to be secured, and the prohibition made practically effective, by means of legisla-tion. But the legislature could provide no enactment which would be a check upon or control itself, for what it did or passed it could at any time undo or repeal, either expressly or by implication. The legislature showed its understanding of the meaning of this section, and of its duty under it, by enact-ing chapter 111 of the laws of 1891; making it a misdemeanor for any state officer, or other agent of the state, "to create or attempt to create any indebtedness against the state without ex-press authority so to do." Acting upon this theory, and within the limits of their constitutional power, as they evidently thought, and as we think, they expressly and specifically au-thorized and directed the secretary of state to make a contract for a year with the best and lowest bidders for such public printing as the state might require, postponing the making of a specific and sufficient appropriation therefor until the indebt-edness should be actually created, and its amount known to them. We think the long term contract which the legislature authorized the secretary to make for the publication of the re-ports of this court, involves the same question. By express di-rection of the legislature the contract runs until October 1, 1893 and yet no appropriation was made, except for the then en-suing two years. The fact that a confessedly partial and inade-quate appropriation was made would not, it seems to us, satisfy

the principle upon which plaintiff's contention must rest, to-wit, the unconstitutionality of the incurrence of an indebtedness no provision for the payment of which had first been made. So far as the particular question here discussed is concerned, we entertain no doubt of the validity of either contract. Without undertaking to say that under no circumstances could this provision be held to affect or control the power of the legislature to incur, or to direct the incurrence of indebtedness against the state,—a question we leave to be discussed and decided when fairly presented,—we are entirely satisfied that the prohibition was never intended to, and consequently does not, forbid or prevent the legislature from immediately authorizing or directing the incurring of an indebtedness in the current and usual administration of state affairs. This has been the view of the legislature since the organization of the state, and at every session it has directed the purchase of articles of convenience, on the credit of the state, without an appropriation having first been made. To hold that this section of the constitution prohibits the legislature from doing this would, we think, be to construe and use it as it was never intended to be construed and used, but the interpretation which would allow indebtedness to be so incurred would certainly allow the making of the contracts challenged by plaintiff. Application for a peremptory writ of prohibition is denied.