BRAMS, Plaintiff, v. STATE OF SOUTH DAKOTA, Defendant.

(262 N. W. 89.)

(File No. 7816.   Opinion filed July 23, 1935.)

*Sutherland & Payne,* of Pierre, and *W. M. Potts,* of Mobridge, for Plaintiff.

*Walter Conway,* Attorney General, and *Herman L. Bode,* Assistant Attorney General, for the State.

CAMPBELL, J. Pursuant to proposal by chapter 34, Laws Special Session 1918, the people of this state, at the November, 1918, General Election, adopted as section 14, art. 13, Constitution of South Dakota, the following: "The mining, distribution and sale of coal are hereby declared to be works of public necessity and importance in which the state may engage, and the legislature may enact suitable laws to carry this provision into effect and to · empower the state to acquire, by purchase or appropriation, all lands, structures, easements, tracts, rights of way, equipment, cars, motive power, and all other facilities, implements, instrumentalities, and materials necessary or incidental to the acquisition, mining, manufacturing and distribution of coal for fuel purposes: Provided, however, that no expenditure of money for the purposes enumerated in this section shall be made except upon a vote of two-thirds of the members elect of each branch of the legislature."

Thereafter, by chapter 136, Laws 1919, the Legislature created the state coal mining commission with authority inter alia 'to "open, establish and operate coal mines * * * and to distribute and sell coal to citizens of this state. * * *" Section 5. This statute likewise appropriated to the use of the coal mining commission the sum of $150,000 and provided that such money should be withdrawn from the state treasury from time to time in such amounts as, in the opinion of the coal commission, was reasonably necessary for the transaction of its business and should be placed in a bank "in a revolving fund to the credit of the said commission." Section 6. The statute also provided that all sums of money received from the sale of any product of the mines should likewise be placed in said fund and said revolving fund was to be disbursed "by or under the supervision of said commission pursuant to such rules and regulations as it may fix and establish in that behalf. * * *" Section 6.

The scheme contemplated that the operation of coal mines by the state should be self-supporting and producing sufficient profit ultimately to repay to the state treasury the $150,000 appropriation originally made for the establishment of the revolving fund. To this end the statute provided that in fixing the selling price of coal "provision shall be made for only such margin of profit as may be necessary, after defraying all expenses of operation, to restore and pay into the State Treasury the appropriation of one

hundred fifty thousand ($150,000) dollars made in the next succeeding section, and to set aside a depreciation reserve for the replacement of plant equipment as may be necessary" (section 5), and the statute further provided that the coal mining commission should "from time to time transfer from said revolving fund to the general fund in the State Treasury any accumulation of funds which in its opinion may not be actually needed for the transaction of its business" (section 6). This statute passed as an emergency measure and by a vote of more than two-thirds of the members elect of each branch of the 1919 Legislature. The coal mining commission contemplated by this statute was duly established and organized and has since, to an extent and degree varying from time to time, engaged in the mining of coal both in South Dakota and North Dakota and in the distribution and sale thereof to citizens of this state. As an emergency measure and by the vote of more than two-thirds of the members elect of each house, the 1935 Legislature enacted chapter 36, Laws 1935, which provides: "There is hereby appropriated the sum of Nine Thousand, Four Hundred Eighty-two Dollars and Eighty-three Cents ($9,482.83) for the payment of the past due obligations of the State Coal Mine Commission, said sum to be paid out on the warrant of the State Auditor based upon the approval of the said claims and obligations by the State Coal Mine Commission."

Section 2109, R. C. 1919, is to the effect that "it shall be competent for any person deeming himself aggrieved by the refusal of the state auditor to allow any just claim against the state, to commence an action against the state by filing with the clerk of the supreme court a complaint setting forth fully and particularly the nature of the claim." Purporting to act under the section last mentioned, the plaintiff above named has instituted an original proceeding in this court by filing with the clerk hereof his complaint against the state. The gist of the complaint (as amended per stipulation of counsel) is about as follows:

Plaintiff alleges that in July, 1933, he contracted with the Sunshine Coal Company to strip certain coal land of the overburden thereon and construct drainage ditches for the coal beds thus exposed, which contract was made at the instance and request of the state coal mining commission and by its terms assignable to said commission on the part of the Sunshine Coal Com-

pany and was subsequently assigned to and taken over by the coal mining commission, the purpose of the contract being to enable the coal mining commission to mine and sell coal as authorized by statute, the coal mining commission having previously leased the land in question and having the right to go upon said land and mine and take the coal therefrom. By the terms of the contract, plaintiff was to receive 15 cents per cubic yard for overburden removed and 15 cents per cubic yard for necessary excavation for drainage ditches "out of the first moneys received from sale of coal from said coal beds and coal fields," the coal mining commission reserving, however, the right to withhold from such revenues 25 per cent thereof for payment of miners, truckers, purchase of tools, royalty on coal, etc. The contract contemplated the stripping and drainage of a tract of land approximately 200 feet wide by 800 feet long with an average overburden of 20 to 22 feet, and provided that work should begin not later than August, 1933, and be prosecuted diligently and faithfully to completion, subject to delays from unusual or extraordinary conditions.

Plaintiff alleges that prior to January 1, 1934, he stripped and drained two certain portions of the tract pursuant to the designation and request of the coal mining commission, known and referred to as pit No. 1 and pit No. 2, removing 57,162 cubic yards of earth, whereby, according to the contract, the state of South Dakota and the state coal mining commission became indebted to plaintiff in the sum of $8,574.30. Plaintiff further alleges that during the period between the execution of the contract and March 1, 1934, he proceeded with the stripping of a third portion of the tract which was designated by the state coal mining commission and known and referred to as pit No. 3, and having excavated and removed 17,129 cubic yards of earth from pit No. 3, the state coal mining commission on or about March 1, 1934, compelled plaintiff to desist and refused to allow him to complete the work of stripping said pit No. 3. Plaintiff alleges that he was ready, able, and willing to complete the stripping of pit No. 3 when he was wrongfully compelled to desist by the coal mining commission; that the completion would have required the removal of 12,000 additional cubic yards of earth, and that the removal thereof would have been much less expensive than the removal of the 17,129 cubic yards previously removed because of a much shorter haul

being necessary, and plaintiff, being thus deprived of the benefit of the short haul on the latter portion of the work by reason of the wrongful conduct of the coal mining commission and in breach of its contract, alleges the reasonable value of his labor and services in removing the 17,129 cubic yards from pit No. 3 to be the sum of $3,409.35. Plaintiff therefore alleges that the state of South Dakota became indebted to plaintiff in the aggregate sum of $11,983.65, of which there was paid to plaintiff on January 1, 1934, the sum of $8,377.41, leaving a balance due of $3,606.24. Plaintiff further alleges that after he stripped pits 1 and 2 the coal mining commission proceeded to mine and sell coal therefrom and received as the proceeds of said coal money more than sufficient to pay plaintiff in full (even after reserving 25 per cent of said receipts for mining operation expense), but that the coal mining commission failed and refused to pay plaintiff and expended said money for other purposes, notwithstanding its contract; that the coal mining commission has paid out and expended all moneys received by it from the sale of coal and from all other sources and has disbursed and exhausted its revolving fund created by chapter 136, Laws, 1919, and at the time of the commencement of this action had no moneys or funds in its possession or under its control save only the sum of $9,482.83 in the state treasury appropriated by chapter 36, Laws 1935, for the payment of its past-due obligations, although during its existence the coal mining commission had invested more than $236,000 in coal bearing and other lands, buildings and equipment and at all times during the years 1933 and 1934 had on hand, as property of the state, lands, buildings, and equipment, the actual market value of which far exceeded the amount due plaintiff and far exceeded the amount appropriated by chapter 36, Laws 1935. Plaintiff also alleges that prior to the commencement of this action he presented his claim to the state coal mining commission and likewise to the state auditor of the state of South Dakota, both of whom refused to allow the same or any part thereof; wherefore plaintiff asked judgment for the sum of $3,606.24 with interest from March 1, 1934, together with his costs and disbursements. As a second cause of action, plaintiff alleges substantially the same facts (save only for the execution of the written contract) and alleges the performance of the same work and labor on his part at the special instance and request

of the state coal mining commission; alleges the reasonable value of his services at $11,983.65, and asks recovery of the unpaid balance of $3,606.24. In other words, plaintiff seeks his recovery in the alternative, either upon contract or upon quantum meruit. To this complaint defendant, state of South Dakota, interposed a demurrer upon the following grounds: "(1) That the Court has no jurisdiction over the subject of the action; (2) that several causes of action have been improperly united; (3) that the complaint does not state facts sufficient to constitute a cause of action."

The matter came on for hearing in due course upon the issues made by the demurrer, and has been presented and argued by counsel both orally and upon briefs and is now for our disposition.

■ With reference to the first ground of demurrer, if the complaint discloses that plaintiff is aggrieved by the refusal of the state auditor to allow a just claim against the state, there is no question but that this court has jurisdiction of the subject-matter of the action under section 2109, R. C. 1919.

■ With reference to the second ground of demurrer, the complaint does not in reality seek to unite several causes of action in the same complaint. It is an attempt to state a single cause of action in two different counts. Plaintiff has declared upon an express written contract and a breach thereof and has also declared in assumpsit upon quantum meruit, seeking, however, to establish but one liability against the defendant, whatever may be the basis of the obligation. The practice is supported by the holding of this court in Norbeck & Nicholson Co. v. Pease (1907) 21 S. D. 368, 112 N. W. 1136.

As to the insufficiency of the complaint to state a cause of action (whether upon express contract or on quantum meruit), defendant outlines its contentions as follows:

"I. That plaintiff's cause of action is not one which can be maintained against the State in an original action in this court.

"II. That the contract of the plaintiff is void in that it was not made pursuant to an appropriation first made, and that even the legislature is prohibited by the Constitution from authorizing its payment.

"III. That the Coal Mining Commission was not empowered to make the contract upon which the complaint is predicated because the project was not on land owned by the state.

"IV. That plaintiff under the terms of the contract was not to be paid except out of the proceeds of the sale of coal.

"V. That the 1935 appropriation does not include plaintiff's claim against the Coal Mining Commission, and is void."

█ The powers granted by chapter 136, Laws 1919, to the state coal mining commission are broad and comprehensive. They are authorized to explore the coal resources of this and adjacent states and to locate coal deposits and coal fields and to engage generally in the opening, development, and operation of coal mines. We find nothing in the statute which requires the commission to conduct its mining operations solely upon land owned by the state of South Dakota or which prohibits the commission from purchasing or leasing coal and mineral rights in land owned by third persons and conducting mining operations thereon.

Defendant urges that plaintiff has, if anything, merely a suit against the coal mining commission or a claim against its revolving fund, arguing that the statute contemplates that all accounts payable by the coal mining commission are audited, allowed, and regulated by the commission itself and paid, not through the state auditor, but by its vouchers upon its own bank account. Defendant further argues that at the time plaintiff's contract was made the coal mining commission had no authority to incur such an obligation as against the state or to bind the state in any manner for the payment thereof because there did not then exist any available appropriation of money in the state treasury for the payment thereof and consequently the transaction was within the prohibition of Constitution, section 9, art. 11, which provides, "no indebtedness shall be incurred or money expended by the state * * * except in pursuance of an appropriation for the specific purpose first made"; thence defendant argues that plaintiff's contract was made without express authority of law and that it was utterly void and that even the Legislature could not subsequently provide for the payment thereof, being forbidden so to do by the provisions of section 3 of art. 12 of the Constitution, which states that, "the legislature shall never * * * authorize the payment of any claims or part thereof created against the state, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void. * * *"

With these contentions of the state we find ourselves unable to agree. Whether plaintiff might have proceeded against the coal mining commission, either individually or as a body, or might have undertaken to reach the revolving fund of the commission if there were any money therein, we need not and do not undertake to decide in this case. Pursuant to constitutional mandate of the people, the state of South Dakota entered the coal business but it did not by so doing denude itself of sovereignty or become a private corporation. Paulus v. State of South Dakota (1924) 52 S. D. 84, 201 N. W. 867. See, also, State v. Board of Com'rs of Beadle County (1928) 53 S. D. 609, 222 N. W. 583; McDonald v. Helgerson (1928) 54 S. D. 136, 222 N. W. 694. It follows therefore that the state coal mining commission was a mere tool or agency or device of the sovereign state for the purpose of conducting and carrying on the coal mining business. By the enactment of section 15 of article 13 of the Constitution in 1918 the state was authorized to pledge the credit of the state to provide funds for the conducting of the coal business "any provision in this constitution to the contrary notwithstanding." We think, generally speaking, that section 9 of article 11 of the Constitution is intended as a limitation upon the power of officers, departments, and agencies of the state other than the Legislature and does not operate to prevent the Legislature from incurring or directing the incurring of indebtedness. Carter v. Thorson (1894) 5 S. D. 474, 59 N. W. 469, 24 L. R. A. 734, 49 Am. St. Rep. 893. The coal mining commission being authorized to carry on the business of mining, producing, and marketing coal and being given a broad general power "to do any and all things in the premises requisite and necessary in the performance of their duties under the provisions of this act" (section 4), and all sums of money to be received from the sale of coal being, in substance, appropriated by the Legislature to the uses of said commission in the conducting of said business, we are of the opinion that said coal mining commission was authorized to contract for the work done by the plaintiff and to agree to pay therefor out of the receipts reasonably to be expected to be presently received from the coal thereby made available for sale and distribution. Under the particular circumstances here presented (and we desire definitely to confine our opinion to the facts of this particular case), we are of the opinion

that there was authority of law for the contract in question. The contract being thus authorized in behalf of the state by an agency of the state, upon the performance thereof (or the wrongful breach thereof by the state), a liability on the part of the state was created which the Legislature not only had the power to appropriate for, but, as a matter of common honesty and decency, ought to appropriate for in view of the fact that the revolving fund of the coal mining commission has been exhausted and particularly in view of the fact that the coal mining commission has appropriated to other purposes the revenue out of which it could have paid and promised to pay this obligation. Cf. Van Dusen v. State (1898) 11 S. D. 318, 77 N. W. 201. It is doubtless true that whatever obligations might rest upon the state plaintiff could not maintain this action unless there was an available appropriation for the payment of such judgment as he might recover. Sigwald v. State (1926) 50 S. D. 37, 208 N. W. 162. As to what plaintiff's remedy might be, under those circumstances, we need not speculate, for the Legislature in fact has made available by chapter 36, Laws 1935, a sum of money for the payment of "the past due obligations of the State Coal Mine Commission," which may be paraphrased to read, "For the payment of lawful claims against the State of South Dakota incurred pursuant to authority of law by the State Coal Mine Commission." As we have above stated, we think plaintiff in his complaint sufficiently alleges that he is the owner and holder of such a claim. He alleges the presentation thereof both to the state coal mining commission and to the state auditor, and alleges that they wrongfully failed and refused to allow his claim. If plaintiff can establish the allegations of his complaint or such of them as may be controverted by the defendant he will be entitled, we think, to a judgment payable out of the fund appropriated by chapter 36, Laws 1935.

We are therefore of the opinion that the complaint is good against demurrer and it will be the order of this court that the demurrer of the defendant be in all things overruled and that said defendant have ten days from and after the filing of this opinion to serve and file an answer if it shall be so advised, and if defendant shall fail so to do, then plaintiff may apply to this court ex parte without other or further notice for judgment as by default.

WARREN, P. J., and POLLEY and ROBERTS, JJ., concur.

RUDOLPH, J., not sitting.