BARNSDALL REFINING CORPORATION, et al, Respondents, v. WELSH, as DIRECTOR OF TAXATION, et al, Appellants.

(269 N. W. 853.)

(File No. 7910. Opinion filed November 16, 1936.)

648

*Walter Conway,* Attorney General, and *R. F. Drewry,* Assistant Attorney General, for Appellants.

*O'Keeffe & Stephens,* of Pierre, for Respondents.

ROBERTS, J. This action was brought to enjoin the defendant officers from enforcing, or attempting to enforce, against the plaintiffs the provisions of chapter 204, Laws 1935. Under the provisions of this statute the operation of any store within this state without a license is made unlawful. The license fees to be paid are graduated according to the number of stores to be operated "under the same general management, supervision or ownership." Upon one store the annual license fee is $1; upon two or more, but not to exceed ten, $5 for each additional store; and in excess of ten stores, $10 for each additional store. A tax upon the combined gross sales of all stores "under a single or common ownership, supervision or management" is also imposed with an increase in rate graduated according to volume. It increases from

the rate of one-eighth of one per cent upon all gross sales at retail during the calendar year of $50,000 or less to a rate of three-fourths of one percent upon all gross sales at retail in excess of $1,000,000. All gross sales at wholesale regardless of amount are taxed at the rate of one-fifth of one per cent.

The complaint alleges that the plaintiffs are corporations engaged in the sale and distribution of petroleum products, automobile accessories, and other merchandise at retail and wholesale; that each is engaged in the operation of two or more places of business in this state; and that the plaintiffs will be liable for license fees and taxes imposed under the provisions of this statute unless it is adjudged that said act failed of passage or is unconstitutional. It is alleged that this measure was introduced in the upper House of the Legislature as Senate Bill No. 154; that there were forty-five members elected to the Senate, and upon final passage there were yeas 27 and nays 18; that notwithstanding said appropriation bill did not receive an affirmative vote of two-thirds of the members elected, it was declared passed; that the bill was transmitted to the House of Representatives, where it was amended; that on final passage of the bill as amended, 58 members voted yea and 38 voted nay; that 7 members were absent and not voting; that the bill not having received an affirmative vote of two-thirds of the members elected was declared lost by the speaker of the House; that an appeal was taken from the decision of the chair, and upon the question whether the chair should be sustained there were nays 50 and yeas 27; that the bill was then declared passed notwithstanding it did not receive an affirmative vote of two-thirds of the 103 members elected to the House; that thereafter the bill came before the Senate for concurrence in the House amendments; that upon a substitute motion "that the senate do not concur in house amendments to senate bill Number 154" there were yeas 19 and nays 25, and the president of the Senate then ruled that the substitute motion was lost and that the House amendments were thereby concurred in by the Senate; that no vote of the Senate was taken upon the question of the final passage of the bill as amended by the House of Representatives; and that the bill was signed by the presiding officers of the Senate and House, was approved by the Governor on March 14, 1935, and was thereafter filed in the office of the Secretary of State.

Plaintiffs claim that the classification of stores for payment of licenses according to the stores owned and the classification by reference to gross sales for the imposition of the tax is arbitrary and violates the equal protection clause of the Fourteenth Amendment and provisions of the Constitution of this state; that basically there is no distinction between the provisions of this statute and the Kentucky statute declared unconstitutional in a recent decision of the United States Supreme Court, Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 55 S. Ct. 525, 79 L. Ed. 1054, whose decision on the question whether state laws offend the Federal Constitution is binding on state courts. We need not undertake to detail the facts alleged to sustain these claims.

Defendants demurred to the complaint, but the demurrer was overruled, and defendants have appealed to this court.

A preliminary question with respect to the remedy by injunction is presented. Equity will not assume jurisdiction to grant relief by injunction or otherwise in tax cases if there is an adequate remedy at law. Chicago & N. W. Ry. Co. v. Rolfson, 23 S. D. 405, 122 N. W. 343; Duncan v. Corson County, 38 S. D. 623, 152 N. W. 395; Zimmerman v. Corson County, 39 S. D. 167, 163 N. W. 711. Defendants contend that there is such a remedy in the provisions that "it shall be competent for any person deeming himself aggrieved by the refusal of the state auditor to allow any just claim against the state, to commence an action against the state by filing with the clerk of the supreme court a complaint setting forth fully and particularly the nature of the claim." Section 2109, Rev. Code 1919. This section, however, does not authorize the bringing of an action upon a claim for the payment of which no appropriation has been made. Sigwald v. State, 50 S. D. 37, 208 N. W. 162; Brams v. State, 63 S. D. 571, 262 N. W. 89.

Section 11 of the act in question reads as follows: "Any and all expenses incurred by the Director of Taxation in the administration of this Act shall be paid out of the funds accruing from the collection of license fees and taxes herein imposed, and said expenses may be paid upon a warrant or warrants duly approved by said Director of Taxation. All money remaining after the payment of administration expenses shall be deposited by the State Treasurer in a fund to be known as the State Relief Fund and which

fund shall be expended for the relief of the poor in a manner to be directed by the Governor of this State. Provided, that the money credited to the State Relief Fund during any one fiscal year shall not exceed the sum of three-hundred thousand dollars ($300,-000). All collections in excess of said three-hundred thousand dollars ($300,000) shall be credited by the State Treasurer to the State General Fund."

A claim for taxes wrongfully exacted by the state would not be chargeable to expenses incurred by the Director of Taxation under section 11, and defendants do not contend that such claim could be paid from any other fund set apart by the Legislature.

■ ■ But it is argued that if license fees and taxes be paid to avoid the penalties of the statute and the statute is unconstitutional, title to the money would not pass to the state. If the state under such circumstances became a trustee, an action, however, to recover the specific funds would not come within the contemplation of the provisions of section 2109 which applies only to claims which, if valid, render the state a debtor and not to equitable claims to specific funds. As the permission to be sued is entirely voluntary on the part of the sovereignty, it follows that it may submit itself to suits upon specified claims and the consent may be made subject to such conditions and limitations as are deemed desirable. In our opinion the granting of the relief suggested would be in excess of the authority conferred by statute.

■ Section 2, article 12 of the Constitution of this State, provides: "The general appropriation bill shall embrace nothing but appropriations for ordinary expenses of the executive, legislative and judicial departments of the state, the current expenses of state institutions, interest on the public debt, and for common schools. All other appropriations shall be made by separate bills, each embracing but one object, and shall require a two-thirds vote of all the members of each branch of the legislature."

This section of the Constitution makes a distinction between "appropriations for ordinary expenses of the executive, legislative and judicial departments of the state, the current expenses of state institutions, interest on the public debt, and for common schools" which may be embraced within the general appropriation bill and enacted by a majority vote, and "all other appropriations" which

require for enactment a two-thirds vote of all the members of each House of the Legislature. Section 11 of the act under consideration contains apt and suitable terms to constitute an appropriation, and required the assent of two-thirds of all members of each House.

Defendants contend that an enrolled bill which has been authenticated by the presiding officers of the two legislative bodies, approved by the Governor, and deposited with the Secretary of State, is conclusive of its passage in accordance with all constitutional requirements. No court disputes the proposition that all legislation to be valid must be enacted in conformity with the Constitution. Marshall Field & Co. v. Clark, 143 U. S. 649, 12 S. Ct. 495, 497, 36 L. Ed. 294. When the enactment of a statute is challenged, the problem arises concerning the character of evidence which may be accepted in determination of that question. The sources of official information are the enrolled bills and legislative journals. The question whether the validity of an enrolled bill when it has been duly authenticated, approved by the Governor, and filed with the proper officer can be impeached by a resort to legislative journals has been the subject of much judicial discussion. In a number of jurisdictions it is held that while there is a presumption that an enrolled bill was legally enacted, the presumption is not conclusive and the court may look behind such act to determine whether the legislature observed constitutional requirements in its passage, and for this purpose recitals in legislative journals may be considered. This view is frequently termed the journal entry rule. Other courts adhere to the enrolled bill rule which regards the enrolled bill as conclusive evidence of its due enactment and the courts will not look beyond it to the legislative journals to determine whether it has been regularly enacted. A third view, referred to as a "modified enrolled bill rule," regards the enrolled bill as conclusive of its due enactment except when the Constitution expressly prescribes a specific journal entry and an act is attacked for failure to observe this requirement. 25 R. C. L. 894-901; notes, 23 L. R. A. 340, 40 L. R. A. (N. S.) 1; 9 Ann. Cas. 582. See, also, 21 Iowa Law Rev. 79, 538, 573.

The question whether or not the courts may go behind the enrolled bill has been considered in prior decisions of this court, but

the precise question of the effect of the requirements of specific journal entries by the Constitution has not been fully considered. In Narregang v. Brown County et al., 14 S. D. 357, 85 N. W. 602, 603, this court said: "We are of the opinion that public policy, the better reasoning of the decisions, and the great weight of authority support the respondents' contention. The authorities sustaining the appellant's view take the position that, as the proceedings provided by the constitution for the passage of bills are mandatory, it is the duty of the court, when any bill is claimed to have been passed in violation of any of the mandatory provisions of the constitution, to examine the journals of the two houses, and, if it finds evidence therein that such is the fact, to declare such act null and void. In this view, it will be seen, the court virtually ignores the authentication of the bill by the presiding officers, and substitutes in its place the memoranda of the clerks found in the journals, transcribed perhaps months or years after the legislature which passed the act has adjourned. Courts that take this view seem to overlook the fact that the presiding officers of the two houses act under the solemnity of their oaths in certifying to the bills passed, and that the members of the two houses and the members of the various committees, also, are acting under the solemnity of an oath to support the constitution of the state, and that the provisions of the constitution providing the various steps that shall be taken in the passage of a bill are addressed mainly to the legislature. Such a rule requires that all persons shall be presumed to know the law, not only as it is preserved in the public records of the state, but as it may be changed, modified or annulled by the clerks' memoranda in the journals of the two houses; and neither lawyer nor layman can be said to know what law is in force unless he is familiar with the journals of the two houses and the legal effect of the journal entries." No distinction is made in this decision in the conclusiveness of an enrolled bill between matters not required to be entered in the legislative journals and those so required by the Constitution to be entered.

The provisions of our Constitution pertaining to journal entries are as follows:

"Each house shall keep a journal of its proceedings and publish the same from time to time, except such parts as require secrecy, and the yeas and nays of members on any question shall be

taken at the desire of one-sixth of those present and entered upon the journal." Section 13, article 3.

"In all elections to be made by the legislature the members thereof shall vote viva voce and their votes shall be entered in the journal." Section 14, article 3.

"The enacting clause of a law shall be: 'Be it enacted by the legislature of the State of South Dakota' and no law shall be passed unless by assent of a majority of all the members elected to each house of the legislature. And the question upon the final passage shall be taken upon its last reading and the yeas and nays shall be entered upon the journal." Section 18, article 3.

"The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the legislature, after their titles have been publicly read immediately before signing, and the fact of signing shall be entered upon the journal." Section 19, article 3.

"Every bill which shall have passed the legislature, shall before it becomes a law, be presented to the governor. If he approve, he shall sign it, but if not, he shall return it with his objection to the house in which it originated, which shall enter the objection at large upon the journal and proceed to reconsider it. If after such reconsideration, two-thirds of the members present shall agree to pass the bill, it shall be sent, together with the objection, to the other house, by which it shall likewise be reconsidered, and if it be approved by two-thirds of the members present, it shall become a law; but in all such cases the vote of both houses shall be determined by the yeas and nays, and the names of the members voting for and against the bill shall be entered upon the journal of each house respectively." Section 9, article 4.

"Any amendment or amendments to this constitution may be proposed in either house of the legislature, and if the same shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon." Section 1, article 23.

The Constitution, it will be observed, provides in positive language that no bill shall become a law unless on its final passage the vote be taken by yeas and nays and the same be entered in each

House upon the journal. The requirements as to the passage of a special appropriation act are the same as any other act except that a two-thirds majority is required. The journal furnishes definite evidence whether or not any measure upon its final passage has received the required majority. The entry of the yea and nay vote is clearly mandatory, and the Constitution makes no distinction between the weight to be given to such entry and the requirement that all bills passed shall be signed by the presiding officer of each House and the entry of such fact in the journal. These requirements proceed from the same source, and the final authentications by the presiding officers are not in terms made conclusive evidence that a bill was passed by the requisite majority.

In the case of State ex rel. Lavin v. Bacon, 14 S. D. 394, 85 N. W. 605, it was urged that the Journal of the Senate did not state the fact of the signing of the bill under consideration by the president of the Senate. It was decided upon the authority of Narregang v. Brown County, supra, that the question of whether or not this and other requirements of the Constitution had been complied with could not be considered by this court; that the enrolled bill duly authenticated and filed in the office of the Secretary of State was conclusive. The requirement of the recording of the specific fact of the signing of a bill by the presiding officer in the journal was not discussed in the opinion.

In Krakowski v. Waskey, 33 S. D. 335, 145 N. W. 566, 568, this court held that the enrolled bill on file in the office of the Secretary of State is conclusive evidence as to the correctness of its contents and quoted with approval the following from Sherman v. Story, 30 Cal. 253, 89 Am. Dec. 93: " 'Better, far better, that a provision should occasionally find its way into the statute through mistake, or even fraud, than that every act, state and national, should at any and all times be liable to be put in issue and impeached by the journals, loose papers of the Legislature, and parol evidence. Such a state of uncertainty in the statute laws of the land would lead to mischiefs absolutely intolerable.' "

It was contended in that case that legislative journals were made public records by the enactment of chapter 167, Laws 1909, and constituted conclusive evidence that the act as passed by the Legislature did not contain certain language found in the enrolled

bill. Section 5124, Rev. Code 1919, had its origin in this act of 1909, and has been subsequently amended by chapter 173, Laws 1929. It was held that the statute was not material to the inquiry in that case. We do not wish, by the views stated in the instant case, to be understood as receding from such holding. It is not necessary at this time to construe the provisions of section 5124, as amended. It is apparent that in the instant case where the issue is whether an act was passed by the required majority, decision rests upon the provisions of the Constitution rather than the statute under which journals are declared to be public records and admissible in evidence.

The rule with respect to the conclusiveness of an enrolled bill as to the correctness of its contents was reiterated in the case of State v. Schmidt, 42 S. D. 267, 173 N. W. 838. In that case the contention was also made that the resolution under consideration had not been signed by the presiding officer of each house in the manner required by the Constitution. This court examined the journals which disclosed that in each House the presiding officer publicly read the title to the resolution and signed the same in the presence of the House, and the question of the effect of an omission to record the fact of signing was not presented. Likewise, in response to the request of the Governor concerning the constitutionality of an act, the enrolled bill and the legislative journals were examined by the members of this court, and the opinion was expressed that the act was lawfully adopted and approved. In re Opinion of Judges 43 S. D. 648, 180 N. W. 957.

This court in Narregang v. Brown County, supra, cited and quoted with approval Marshall Field & Co. v. Clark, supra. In this case before the Federal Supreme Court the validity of an act of Congress was involved. A section that was contained in the act when it passed the two Houses of Congress was omitted from the enrolled bill, and it was sought to establish this fact by reference to the journals. The court expressly reserved decision as to the conclusiveness of a bill where the attack is as to matters required to be entered in the journals. The court said: "In regard to certain matters, the constitution expressly requires that they shall be entered on the journal. To what extent the validity of legislative action may be affected by the failure to have those

matters entered on the journal we need not inquire. No such question is presented for determination."

This court in the Narregang Case also quoted with approval from the case of Pangborn v. Young, 32 N. J. Law 29, wherein it was urged that the direction to enter the yea and nay vote constituted a prerequisite to the passage of a bill, but the court held that the enrolled bill was conclusive. The New Jersey court, in Ex parte Hague, 104 N. J. Eq. 31, 144 A. 546, overruled the Pangborn Case and held that since the Constitution required the vote on final passage to be entered on the journal in each House, such entry was conclusive as against an enrolled bill.

In Fordyce v. Godman, 20 Ohio St. 1, concerning the question that arose out of a claim that a two-thirds vote was not received in each branch of the legislative assembly, the court said: "This entering of the yeas and nays upon the journal must have been intended to furnish the permanent evidence of the state of the vote so recorded. * * * Were we to hold otherwise, we would in effect hold that a bill may become a law without receiving the number of votes required by the constitution; that a single presiding officer may by his signature give the force of law to a bill which the journal of the body over which he presides, and which is kept under the supervision of the whole body, shows not to have been voted for by the constitutional number of members. The plain provisions of the constitution are not to be thus nullified and the evidence which it requires to be kept under the supervision of the collective body, must control, when a question arises as to the due passage of a bill."

The same view is expressed by the Wyoming court in State ex rel. City of Cheyenne v. Swan, 7 Wyo. 166, 51 P. 209, 213, 40 L. R. A. 195, 75 Am. St. Rep. 889: "The English decisions, and those of some of the states, denying any right to consult the journals, are not in point, owing to a radical difference between the record authority of the journals of parliament and the legislatures of such states, and legislative journals under a constitution like our own. Here the journals are not kept merely in the interest of orderly procedure, but they exist in obedience to a constitutional command; and the nature of their contents is, to some extent, prescribed. As it is the peculiar province of the courts

to pronounce upon the validity of legislative enactments, they should possess auhority to have recourse to the constitutional record of legislative procedure, in so far, at least, as that record is constitutionally required to make disclosure, and, within that limit, to the extent of giving effect to an affirmative showing."

In the case of Spangler v. Jacoby, 14 Ill. 297, 58 Am. Dec. 571, the court said: "If a certain act received the constitutional assent of the body, it will so appear on the face of its journal. And when a contest arises as to whether the act was thus passed, the journal may be appealed to to settle it. It is the evidence of the action of the house, and by it the act must stand or fall. It certainly was not the intention of the framers of the constitution, that the signatures of the speakers and the executive should furnish conclusive evidence of the passage of a law."

██ ██ The provision that the yeas and nays shall be entered on the journals furnishes definite and conclusive evidence whether a bill has been passed by the necessary majority or not. Cooley, Constitutional Limitations (8th Ed.) vol. 1, p. 290. The Legislature must obey the fundamental law and must follow its requirements and directions in the passage of statutes. It is required to make the constitutional record of the vote upon each measure, and it is not for this court to nullify by judicial pronouncement its purpose by declaring that an enrolled bill in all instances is conclusive of its passage. The clear trend of decisions is in support of the view that an enrolled bill duly authenticated, approved by the Governor, and filed with the proper officer, may be impeached by the legislative journals on the ground that it has not received a constitutional majority of the members elected to each house when the Constitution requires the yeas and nays to be entered. Ritzman v. Campbell, 93 Ohio St. 246, 112 N. E. 591, L. R. A. 1916E, 1251, Ann. Cas. 1918D, 248; Smith v. Thompson, 219 Iowa, 888, 258 N. W. 190; Ex parte Benight, 53 Okl. Cr. 293, 11 P. (2d) 208; Ex parte Hague, supra; State v. Schultz, 44 N. D. 269, 174 N. W. 81. The following are a few of the many other authorities sustaining the same view: State ex rel. Turner v. Hocker, 36 Fla. 358, 18 So. 767; State ex rel. Casper v. Moore, 37 Neb. 13, 55 N. W. 299; Neiberger v. McCullough, 253 Ill. 312, 97 N. E. 660; Ritchie v. Richards, 14

Utah, 345, 47 P. 670; R̶ash v. Allen, 1 Boyce (24 Del.)¹ 444, 76 A. 370; N̶iven v. Road Improvement District, 132 Ark. 240, 200 S. W. 997; State ex rel. Kohlman v. Wagener, 130 Minn. 424, 153 N. W. 749; Webb v. Carter, 129 Tenn. 182, 165 S. W. 426; Denver v. R̶ubidge, 51 Colo. 224, 116 P. 1130; In re Drainage Dist. No. 1, 26 Idaho, 311, 143 P. 299, L. R. A. 1915A, 1210; Union Bank v. Oxford Com'rs, 119 N. C. 214, 25 S. E. 966, 34 L. R. A. 487; Opinion of Justices, 35 N. H. 579; Ex parte Howard-Harrison Iron Co., 119 Ala. 484, 24 So. 516, 72 Am. St. Rep. 928.

 The act in question originated in the Senate. When the bill reached the House, that body proceeded to make certain amendments which are not material to a decision. The House Journal indicates that the vote upon final passage of the bill as amended was yeas 58 and nays 38. Seven members were absent and not voting. The bill not having received an affirmative vote of two-thirds of the members elected to the House the speaker declared the bill lost. An appeal was taken from his decision, and the motion to sustain having lost, the bill was declared passed. The Senate Journal indicates that upon a substitute motion the Senate do not concur in the House amendments the Senate voted yeas 19 and nays 25, but we need not decide whether the action on the amendments, within the meaning of the Constitution, constituted a final passage so as to require the entry of the yeas and nays. In this case the House Journal clearly indicates that the bill did not receive the requisite majority and did not pass that branch of the Legislature.

In the case of State v. Kirby, 34 S. D. 281, 148 N. W. 533, the opinion is expressed that if the appropriation act under consideration in that case were invalid on the ground that a two-thirds majority was not received, this did not affect the remainder of the act. But it is not important in the instant case to determine whether the whole of every bill is to be deemed inoperative if it contains an appropriation and has not received a two-thirds majority in conformity with the constitutional requirement or whether the appropriation may be rejected, and the soundness of the dictum in the Kirby Case, if dictum it is, we need not consider. Section 14 of the act under consideration provides that "this Act, being an emergency revenue measure, shall expire and stand re-

·

pealed on the 30th day of June, 1937." The appropriation of the money to be collected under this act is so important a part of the statute that it is apparent that without such appropriation the act would not have passed. If we were to adhere to the view expressed in the Kirby Case, suffice it to say that for reasons stated the entire act must be held to be void.

The order appealed from is affirmed.

All the Judges concur.