**SOUTH DAKOTA AUTOMOBILE CLUB, INC., a South Dakota Corporation; Associated General Contractors of South Dakota, Inc. (Highway Heavy Utilities Chapter), a South Dakota corporation; the Associate Division of the Associated General Contractors of South Dakota, an unincorporated association; South Dakota Trucking Association, a South Dakota corporation, and Jack Rentschler, an individual, Applicants,**

v.

**David VOLK, duly elected treasurer of the State of South Dakota; James Myers, duly appointed director of the Division of Railroads of the State of South Dakota; and Vern Larson, duly elected auditor of the State of South Dakota, Respondents.**

No. 13411.

Supreme Court of South Dakota.

Argued April 24, 1981.

Decided May 8, 1981.

Thomas J. Welk and Jeremiah Murphy of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for applicants; Russell Greenfield and Terry Prendergast, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, on the brief.

Mark V. Meierhenry, Atty. Gen., Pierre, for respondents; John C. Wiles, Asst. Atty. Gen., Pierre, on the brief.

Robert B. Frieberg of Frieberg, Frieberg & Peterson, Beresford, for amici curiae; Steven L. Pier, Legal Intern, Frieberg, Frieberg & Peterson, Beresford, on the brief.

MORGAN, Justice.

This is an original proceeding brought under the provisions of SDCL ch. 21–29, SDCL ch. 21–30, and S.D.Const. Art. V, § 5, wherein applicants seek a writ of mandamus requiring respondent State Treasurer David Volk, upon receipt of the proceeds of the additional tax imposed by Senate Bill 236 (S.B. 236), to expend said collected mo-

nies exclusively for the maintenance, construction, and supervision of highways and bridges of this state, except costs of administration; and further seek a writ of prohibition prohibiting respondents State Treasurer Volk, Director of the Division of Railroads James Myers, and State Auditor Vern Larson from expending for the railroad operation program any state highway funds received from the additional tax imposed by S.B. 236 and appropriated to the Division of Railroads by Section 36 of House Bill 1376 (H.B. 1376), the 1981 General Appropriations Bill. The applications further urge that the relief sought involves a public matter and one of public right involving state highway funds directly and proximately affecting the State of South Dakota and its citizens, as applicants have no plain, speedy, and adequate remedy in the ordinary course of law or otherwise for the harm or damage to be done by the immediate expenditure and contract for the expenditure by respondents.

Upon these applications this court entered an order for and an alternative writ of mandamus directed to respondent State Treasurer Volk, directing him to thereafter accumulate the proceeds of the additional tax imposed by S.B. 236 exclusively for the maintenance, construction, and supervision of highways and bridges in the State of South Dakota, except costs of administration, and also an order for and an alternative writ of prohibition restraining all respondents from proceeding further in the implementation of legislation involving expenditure of the additional tax imposed by S.B. 236 for the operation and maintenance of the rail lines of the State of South Dakota. Both writs were issued in the alternative, and respondents were given an opportunity to show cause why permanent writs should not be entered. Because of the imminency of contract lettings, time for briefing was abbreviated and oral arguments on the motions were set for an early date, at

the request of respondents through their counsel and with the cooperation of counsel for applicants. In the course of briefing, it was suggested by amici curiae and acknowledged and concurred in by applicants that taxes on gasoline and other liquid motor "fuels not used to propel motor vehicles over or upon public highways of this state" may be expended for non-highway uses such as railroads, and applicants agreed that their applications and any permanent writs, if issued, should be restricted to "highway users'" tax proceeds collected under S.B. 236. To that extent we now grant the writs sought and make the alternative writs permanent writs.

While applicants have no dispute with the tax increase provided in S.B. 236 as adopted, the provisions of the bill for the expenditure of funds for railroad operation and maintenance play a key role in our examination of the constitutionality of Section 36 of H.B. 1376. It is this provision that gives rise to this request for relief.

S.B. 236 as originally introduced was entitled "An Act to authorize rail service over essential state-owned rail lines, to provide funding for rail operation and maintenance, to create a special fund and make an appropriation therefore and to declare an emergency." It started out with a provision for a commodities tax on grains, cement, primary forest products, and crushed and broken stone under the administration of the secretary of revenue and "deposited with the state treasurer in the railroad operations fund." The original bill also appropriated $2.7 million to fund railroad operation and maintenance costs over state-owned rail lines.

By amendment during the legislative process, the commodities tax provisions were deleted and an additional one-cent tax was imposed on motor fuels and fuels used in internal combustion engines with certain exceptions.[1] More important for our con-

---

1. Section 6. That chapter 10–48 be amended by adding thereto a new section to read as follows:

    An additional tax of one cent per gallon or fraction thereof is imposed on all fuel sold or

used in this state. For purposes of this section fuel is all combustible gases and liquids used in an internal combustion engine except such fuels as are subject to the tax imposed by chapter 10–47 or to propel aircraft or locomotives or

sideration, however, is that the amendment directs the state treasurer to identify all the proceeds of the one-cent additional tax and deposit them in the state highway fund *for use by the state*, and exempts such proceeds from distribution to political subdivisions under other provisions of the law.[2]

The appropriations provision of S.B. 236 was deleted, but was incorporated almost verbatim as section 36 of H.B. 1376, the general appropriations measure, the only difference being that the source of the $2.7 million appropriation is now the state highway fund rather than the railroad operations fund.

Applicants do not challenge the imposition of the additional one-cent per gallon fuel tax and the deposit of the proceeds in the state highway fund. Rather, their challenge goes to the appropriation under section 36, noted above, and they seek to have this court (1) require State Treasurer Volk to deposit all proceeds of the tax into the state highway fund, and (2) prohibit the state officials from expending any portion of said funds that is realized from fuels used on the highways for the operation and maintenance of railroads in violation of the provisions of S.D.Const. Art. XI, § 8, which provides, in pertinent part:

> [T]he proceeds from the imposition of any excise tax on gasoline or other liquid motor fuel except costs of administration and except the tax imposed upon gasoline or other liquid motor fuel not used to propel a motor vehicle over or upon public highways of this state shall be used exclusively for the maintenance, construction and supervision of highways and bridges of this state.

The Attorney General, responding for the state officials, argues that the appropriation falls within the exclusive strictures of Art. XI, § 8, because another provision of our state constitution, Art. XVII, § 15, provides in part: "Railways heretofore constructed or that may hereafter be constructed, in this state are hereby declared public highways[.]"

The Attorney General's thesis is that whereas the provisions of Art. XVII, § 15 were adopted as part of the original constitution of this state in 1889, and whereas the restrictions of Art. XI, § 8 were adopted as an amendment in 1940, the voters, in voting on the amendment, were aware that railroads are public highways.

The basic issue thus presented is simply, does the term "public highways" as used in Art. XVII, § 15 mean the same thing as the term "highways" as used in Art. XI, § 8?

For clarification, when we speak of "fuel tax" or "gas tax," we are referring to the tax on all motor fuel sold or used in this state under SDCL ch. 10–47 and the excise tax imposed by SDCL ch. 10–48 on all users of fuel within this state when such fuel is used in an internal combustion engine for the generation of power to propel a motor vehicle of any kind and character on the public highways. When we speak of the "tax increase," we are referring to the one-cent tax added to both SDCL ch. 10–47 and SDCL ch. 10–48 by S.B. 236, as adopted.

■ Before considering the issue, we should first discuss this court's scope of review. A court, in construing a constitutional provision, must give regard to the whole instrument, must seek to harmonize the various provisions, and must, if possible, give effect to all the provisions. *Board of Regents v. Carter*, 89 S.D. 40, 228 N.W.2d 621 (1975). However, " '[a] constitutional amendment will prevail over previously adopted provisions of the Constitution with

---

track-motor cars being operated on railroad tracks in road service in this state.
Section 7. That chapter 10–47 be amended by adding thereto a new section to read as follows:
An additional tax of one cent per gallon or fraction thereof is imposed on all motor fuel sold or used in this state except for motor fuel used in aircraft. The reimbursement provisions of § 10–47–44 apply to tax paid under

this Act, but only to tax paid upon fuel not burned in an internal combustion engine.

**2.** SDCL 10–47–72 provides for transfer of a percentage of the motor fuel tax fund to the Forestry & Parks Division. SDCL 10–47–73 and SDCL 10–47–74 then divide the balance, 7/8 to the State Highway Commission and 1/8 to the County Highway & Bridge Fund.

which it conflicts and with which it cannot be harmonized.'" *State v. Meier*, 127 N.W.2d 665, 673 (N.D.1964). Upon adoption of an amendment, it becomes a part of the constitution as much as if it had been originally incorporated therein. Usually amendments are adopted for the express purpose of making a change in the existing system. Particularly applicable in the case of amendments are the rules relating to the intent of the framers and adopters and attainment of the object of a constitution. "The courts are under the duty to consider the old law, the mischief, and the remedy, and to interpret the constitution broadly to accomplish the manifest purpose of the amendment." 16 Am.Jur.2d Constitutional Law § 88 at 415 (1979) (footnotes omitted). This court followed this mandate in *State v. Reeves*, 44 S.D. 568, 184 N.W. 993 (1921).

" 'Generally speaking, principles of construction applicable to statutes are also applicable to constitutions, but not to the extent of defeating the purposes for which a constitution is drawn.'" *Egbert v. City of Dunseith*, 74 N.D. 1, 6, 24 N.W.2d 907, 909 (1946).

In reading the amendment to ascertain the intent of the adopters, we look first to the old law. The 1917 Legislature launched the highway fund with a mill levy on all taxable property in the state and authorized the State Highway Department to use the funds so realized for "constructing and maintaining highways and bridges in this state, and paying the salaries and expenses of the State Highway Department and of its members and employees[.]" 1917 S.D. Sess.Laws ch. 129. Chapter 333 of the 1919 S.D.Sess.Laws abolished the State Highway Department and established the State Highway Commission. That Act acknowledged assent to the Federal-Aid Road Act of 1916, ch. 241, 39 Stat. 355, and section 54 of the 1919 South Dakota Act clearly set out that all monies, federal and state, were to be used first for the state trunk highway system, and then the surplus monies were to be used for the county trunk highway

system. The Federal-Aid Road Act of 1916, which is referred to above, was enacted to aid in the construction of "rural post roads" that were defined in the Act as "any public road over which the United States mails now are or may hereafter be transported," excluding certain streets and roads in populous areas. Supra, at § 2. In the computation of apportionment, part of the ratio was based on the mileage of rural free delivery routes and star routes in each state.

The 1921 Legislature first imposed a fuel tax at the rate of one cent per gallon with the proceeds to go to the state highway fund to be expended for the purposes as set out in 1919 S.D.Sess.Laws ch. 333 and other pertinent laws then and thereafter to be enacted. 1921 S.D.Sess.Laws ch. 292.

The 1923 Legislature raised the tax to two cents per gallon and directed that the proceeds be deposited in the state highway fund for "construction, reconstruction, maintenance, or repairs of highways or roads under the jurisdiction of" the State Highway Commission. 1923 S.D.Sess.Laws ch. 225.

The 1925 Legislature again raised the tax by one cent, to three cents per gallon, and dedicated the money to the same purposes as the 1923 Legislature had. 1925 S.D.Sess. Laws ch. 228.

In 1927 the legislature expanded the use of the proceeds from those mentioned in the 1923 section to include "principal and interest on highway bonds." 1927 S.D.Sess. Laws ch. 168, § 11.

We next perceive that the mischief arose in the 1933 session when the legislature, faced with an appalling deficit of over $10 million in the operation of the defunct Rural Credit Board,[3] apportioned one-half of the balance of the fuel tax proceeds, after paying administration costs, to the Rural Credit Bond and Interest Fund, which fund was appropriated for use by the Rural Credit Board for the payment of principal and interest on Rural Credit bonds and warrants.[4] This drain on the fuel tax pro-

---

3. See report of Attorney General M. Q. Sharpe to 1933 Legislature, House Journal pp. 76–119.

4. 1933 S.D.Sess.Laws ch. 188.

ceeds continued until the 1937 Legislature cut it off as of January 1, 1938. 1937 S.D.Sess.Laws ch. 255, § 2.

The remedy was then provided by Senate Joint Resolution 5 in the 1939 Legislature, which proposed the amendment to Art. XI, § 8. 1939 S.D.Sess.Laws ch. 230. The seed for this amendment was discussed extensively in *In re Opinion of Supreme Court, Etc.*, S.D., 257 N.W.2d 442, 444 (1977), in which we stated:

[The amendment] arose as a result of the enactment of the Hayden-Cartwright Act, 48 Stat. 993, § 12 of which limited federal highway construction money to those states that use state motor vehicle registration fees, licenses, gasoline taxes, and other special taxes on motor-vehicle owners and operators "for the construction, improvement, and maintenance of highways and administration expenses in connection therewith, including the retirement of bonds for the payment of which such revenues have been pledged, and for no other purposes * * *."

We noted that the amendment as proposed had deleted the authorization for bond retirement as found in the federal statute, and we assumed that the legislature had taken this action deliberately. In view of the lessons learned from the 1933 raid on the proceeds to finance the Rural Credit Bond and Interest Fund, that appears to be a safe assumption.

We next consider how this remedy has been applied by this court in intervening cases, and we find that such application has been strict.

The amendment was before this court for the first time almost before the ink was dry, as the result of an enactment of the 1943 Legislature, Sess.Laws ch. 277, commonly referred to as the Tithing Law, which provided that ten percent of the gross receipts of eighteen state boards and commissions, including the State Highway Commission, should be transferred to the general fund, subject to a maximum limit of $50,000 for any such board or commission in any fiscal year. In holding the enactment unconstitutional under Art. XI, § 8, so far as the state highway fund was concerned, this court pointed out:

The Legislature may establish new agencies or authorize existing officers, boards or commissions to use the funds for highway administration, maintenance, construction and supervision. It may change these agencies from time to time and it may vary the administrative procedure. None of these things were done by the act in question. It merely diverts a part of the special highway funds to the state general fund, without providing any assurance that the diverted funds will be used exclusively for highway purposes as required by the constitution.... As a part of that fund the money will be used, not for highway purposes, but for the payment of miscellaneous appropriations, in violation of Article XI, Section 8, of the Constitution.

*State v. Youngquist*, 69 S.D. 423, 427–428, 11 N.W.2d 84, 86 (1943).

Again, in 1950 this court looked at the amendment in *State v. Wilder*, 73 S.D. 330, 42 N.W.2d 891 (1950). After summarizing the pre-amendment history, including the Rural Credit Bond and Interest Fund diversion, this court examined the ballot explanation:

"The purpose of the proposed amendment is, and the legal effect of its adoption would be, to make impossible the imposition or use of any license, registration fee or other charge with respect to the operation of any motor vehicle upon any public highways, or the imposition or use of any excise tax on motor fuel used to propel a motor vehicle on the highways, for any purpose other than for the maintenance, construction and supervision of highways and bridges of this State." ...

. . . .

... The ballot interpreted the 1940 amendment to mean that the described proceeds could not be used "for any purpose other" than on highways, and we unhesitatingly declare that such was the restrictive purpose of those who framed and adopted that addition to our constitution.

Id. at 338–339, 42 N.W.2d at 896 (emphasis omitted).

In a series of cases decided in 1972, this court held that the state highway funds were unreachable by contractors who were suing the state for damages for breach of contract. In *G. H. Lindekugel & Sons, Inc. v. South Dakota St. Hy. C.*, 87 S.D. 32, 39, 202 N.W.2d 125, 129 (1972), we held:

Article XI, § 8 does not permit payment of damages for breach of contract (as distinguished from payments due under the contract), nor for extra or unexpected costs incurred by a contractor, which costs were not provided for in and were in excess of the contract. They do not come within the cited clause or limitation of expenditures in Article XI, § 8.

That decision was also dispositive of the contractors' claims in *John A. Carlson, Inc. v. South Dakota St. Hwy. Com'n*, 87 S.D. 70, 202 N.W.2d 867 (1972), and *Northern Imp. Co., Inc. v. South Dakota St. Hwy. Com'n*, 87 S.D. 71, 202 N.W.2d 861 (1972).

■ In *In re Opinion of Supreme Court, Etc., supra*, at 445, after reviewing the history of the amendment, this court stated:

The history of Article XI, § 8 of our Constitution ... clearly indicates that this is a restricted and impressed fund created by the Constitution that prevents the use of the funds described in the Article for payment of any obligation of the state other than those described in the Article.

The opinion concluded:

Given the explicit instructions of the Constitution that this money is to be used exclusively for the "maintenance, construction and supervision of highways and bridges of this state", the history of the enactment of this constitutional provision and the Supreme Court cases decided since the enactment of the provision, [bonds (issuance, cost, and interest) could not be paid for out of the special highway fund.]

Id. at 446. We hold that in reading the amendment to Art. XI, § 8, the obvious intent of the framers and the voters was to dedicate the proceeds of the taxes on fuel used by motor vehicles on the highways for the maintenance, construction, and supervision of the highways and bridges over which those motor vehicles traveled.

We next consider how the amendment may be read in harmony with Art. XVII, § 15, which was adopted as part of our original state constitution. First of all, we note that Art. XVII is entitled "Corporations." Further, and more important, in reading the entire § 15 provision, we may not stop after the declaration that railroads are public highways, but we must continue to read, "and all railroad and transportation companies are declared to be common carriers and subject to legislative control; and the Legislature shall have power to enact laws regulating and controlling the rates of charges for the transportation of passengers and freight as such common carriers from one point to another in this state."

■ We then review the legislative control and find that at all times the legislature acted to control the railroads through the Board of Railroad Commissioners, which name was changed in 1939 to the Public Utilities Commission. The application of the doctrine of *noscitur a sociis* (the meaning of a particular term in a statute may be ascertained by reference to words associated with them in the statute) leads us to conclude that the purpose of the provision was not to declare railroads public highways in the context of post roads, state trunk highways, county trunk highways, feeder roads, or farm-to-market roads as mentioned in the various federal and state highway acts restricting the use of fuel tax proceeds, but rather to provide the state legislature with a vehicle to control railroad development as it did, acting primarily through the Board of Railroad Commissioners, later the Public Utilities Commission. We say "primarily" because it is noteworthy that when the legislature did perceive a need to assist railroad construction financially, it did so under 1931 S.D.Sess.Laws ch. 106 by authorizing issuance of bonds by county commissioners. Thus, it would appear that prior to the 1940 amendment the legislature did not consider railroads to be

such public highways as are entitled to the benefits of the fuel tax fund.

Nowhere in the legislative history from territorial legislatures until the 1975 session were the railroads ever mentioned in connection with the Department of Transportation, the State Highway Department, or the State Highway Commission, as they were from time to time designated, except when intersections of railroads and streets or highways, or grades of railroads were involved. It is difficult enough to believe that the legislature in 1939 considered railroads to be public highways in the context of Art. XI, § 8, let alone to believe that the voters who voted on the amendment in 1940 considered such. By reading the provision of Art. XVII, § 15 in this manner, we can harmonize the provisions to give them efficacy within the perimeters within which they were drawn.

■ The Attorney General, in his respondents' brief, suggests that from prior *legislative action* the term "public highways" has been interpreted in a broad and liberal sense, so as to include more than hard-surfaced roads. He points out the transfer of funds from the motor fuel tax fund to the Department of Public Safety for the purpose of snowmobile trails; and to the Forestry and Parks Division of the Game, Fish & Parks Department for the treatment of water, control of pollution, and acquisition, construction, and maintenance of various facilities for motorboats. The fault in this argument is that it is the duty of this court, not the legislature, to make determinations of constitutional terms. We find no cases that have been decided by this court that have considered any of the above expenditures.

■ It is suggested on behalf of respondents that the railroads have not been specifically excluded from S.D.Const. Art. XI, § 8. To the extent that said amendment does not say "thou shalt not," they are correct. It appears to us, however, that when the fund is dedicated exclusively for certain purposes, it shall not be used for others. "Exclusively" means to the exclusion of all others. *Standard Oil Co. of*

*Texas v. State,* 142 S.W.2d 519 (Tex.Civ. App.1940). "Exclusively" means "only," "solely," "purely," "wholly," to the exclusion of other things. *Weiprecht v. Gill,* 191 Md. 478, 62 A.2d 253 (1948).

Counsel for amici curiae urges that we view the constitution as a "living, growing, flexible document" (conceding that neither the framers of the amendment nor the electorate foresaw that in 1981 the State of South Dakota would own several hundred miles of railroad property and would not have conceived a deteriorated bankrupt rail system in this state), and that we should therefore determine the intention of the constitutional provision under question here "in the light of our whole experience and not merely in that of what was said a hundred [here fifty] years ago." *Missouri v. Holland,* 252 U.S. 416, 433, 40 S.Ct. 382, 383, 64 L.Ed. 641, 647 (1919).

We understand and appreciate the legislature's problem in raising $2.7 million in today's economy as we know it. In *Gravning v. Zellmer,* 291 N.W.2d 751, 758 (S.D. 1980), we acknowledged: "That the railroad system in South Dakota is in dire condition is not open to serious question. The Chicago, Milwaukee, St. Paul and Pacific Railroad Company has been in bankruptcy since 1977." The opinion then went on to review the step-by-step transition of the railroad or portions thereof from private ownership to public ownership by the State of South Dakota. In our opinion, however, this does not allow us any leeway to vary our previously held strict construction of the amendment. "[A] cardinal rule in dealing with constitutions is that they should receive a consistent and uniform interpretation, so that they shall not ... be taken to mean one thing at one time and another thing at another time, even though the circumstances may have so changed as to make a different rule seem desirable." 16 Am.Jur.2d Constitutional Law § 94 at 423–424 (1979) (footnotes omitted); *Walber v. Piggins,* 2 Mich.App. 145, 138 N.W.2d 772 (1966). The extension of the restricted use of the funds to railroads under any circumstances would require a far greater leap in logic than the

extension of the use of the funds for bonding costs and interest on bridges, or for damages for breach of contracts for construction of highways. A leap of such magnitude, we are not prepared to make.

■ Finally, we look at the appropriation measure itself. Section 36 of H.B. 1376 provides:

There is hereby appropriated out of the state highway fund the sum of two million seven hundred thousand dollars ($2,700,000) to the division of railroads to fund railroad operations and maintenance over state-owned rail lines during fiscal year 1982. Expenditures of funds provided to the railroad operations program shall be made upon warrants drawn by the state auditor pursuant to vouchers approved by the director of the division of railroads, or his designee.

Counsel for amici curiae has suggested that possibly this amount could be appropriated out of the state highway fund proceeds of non-highway fuel taxes. The appropriation contains no limitation to the effect that the appropriation be made out of proceeds of non-highway fuel taxes or other funds not dedicated under Art. XI, § 8. Given the legislative history of section 36, lifted almost verbatim from S.B. 236, which imposed the additional tax on the fuel used in on-highway motor vehicles as well as some off-highway use and for the avowed purpose of providing funding for rail operations and maintenance, we are left with only one possible conclusion—the appropriation is intended to divert proceeds of the one-cent additional tax on fuel used in on-highway motor vehicles to railroad operation and maintenance, and to that extent such appropriation is unconstitutional.

The second paragraph of the alternative writ of mandamus directed to State Treasurer Volk should be amended to read:

YOU ARE COMMANDED, immediately upon service of this writ upon you, to thereafter designate so much of the proceeds of the additional tax imposed by Senate Bill 236 as shall be the proceeds of such tax as is imposed upon gasoline and other liquid motor fuel used to propel a motor vehicle over and upon public highways of this state exclusively for the maintenance, construction and supervision of highways and bridges of the state of South Dakota, except costs of administration.

As amended, said alternative writ should be made permanent.

The second paragraph of the alternative writ of prohibition directed to all respondents should be amended to read:

YOU ARE COMMANDED, immediately upon the service of this writ upon you, to desist and refrain from committing or expending for the operation or maintenance of the rail lines of the state of South Dakota any of the proceeds of the additional tax imposed by Senate Bill 236 as shall be the proceeds of such tax as is imposed upon gasoline or other liquid fuels used to propel a motor vehicle over and upon the public highways of this state.

As so amended, said alternative writ should be made permanent.

All the Justices concur.